IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SANDISK CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 14-352 (SLR) |
| | ) | |
| ROUND ROCK RESEARCH, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF SANDISK CORPORATION'S OPPOSITION TO
## MOTION TO STAY OF ROUND ROCK RESEARCH, LLC

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com
jtigan@mnat.com

*Attorneys for Plaintiff SanDisk Corporation*

OF COUNSEL:

Christopher S. Yates
Hanno Kaiser
Sarah M. Ray
Alan Devlin
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

June 3, 2014

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ....................................................3

SUMMARY OF ARGUMENT .....................................................................................6

STATEMENT OF FACTS .............................................................................................6

      A.     JEDEC Develops Standards and Guards Against Hold-Up....................................6

      B.     Micron Conceals Patents from JEDEC...................................................................7

      C.     Round Rock and Micron Conspire to Abuse the Standard-Setting Process ...........7

ARGUMENT ..................................................................................................................8

I.     A Stay Makes No Sense Because This Case Does Not Rely on the Patent Cases ..............8

      A.     SanDisk's Antitrust Claims Do Not Depend on the Patent Cases ..........................9

      B.     Round Rock's Supracompetitive Pricing Is Separate from the Patent Cases ........12

      C.     Round Rock Should Not Be Permitted To Benefit From Taking Inconsistent Positions....................................................................................................13

II.     A Stay Would Unduly Prejudice SanDisk, Preventing It from Litigating its Claims for Several Years................................................................................................14

      A.     A Stay Would Severely Harm SanDisk .................................................................14

      B.     Round Rock's Proposed Stay Would Last for Many Years ..................................16

III.     No Law Supports Round Rock's Motion...........................................................................18

IV.     No Other Factor Justifies a Stay .......................................................................................20

CONCLUSION...............................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Apotex, Inc. v. Senju Pharm. Co.*,
    921 F. Supp. 2d 308 (D. Del. 2013) ......................................................................... 18

*Apple, Inc. v. Motorola Mobility, Inc.*,
    No. 11-cv-178-bbc, 2011 U.S. Dist. LEXIS 72745 (W.D. Wis. June 7, 2011) ................ passim

*Belden Techs. Inc. v. Sup. Essex Comm'cns*,
    Civ. No. 08-63-SLR, 2010 WL 3522327 (D. Del. Sept. 2, 2012) ...................................... 17, 19

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
    603 F.2d 263 (2d Cir. 1979) ........................................................................................ 13

*Broadcom Corp. v. Qualcomm Inc.*,
    501 F.3d 297 (3d Cir. 2007) ........................................................................................ passim

*Dell Computer Corp.*,
    121 F.T.C. 616 (1996) ................................................................................................. 12

*E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
    711 F. Supp. 1205 (D. Del. 1989) ............................................................................... 15

*Enzo Life Scis., Inc. v. Digene Corp.*,
    C.A. No. 02-212-JJF, 2003 U.S. Dist. LEXIS 10202 (D. Del. June 10, 2003) ...................... 19

*Ericsson Inc. v. Samsung Elecs. Co.*,
    Civ. No. 2:06-CV-63, 2007 U.S. Dist. LEXIS 29257 (E.D. Tex. Apr. 20, 2007) .................... 11

*Eurand, Inc. v. Mylan Pharms. Inc.*,
    Civ. No. 08-889-SLR, 2009 WL 3172197 (D. Del. Oct. 2, 2009) ...................................... 18, 19

*FTC v. Actavis, Inc.*,
    133 S. Ct. 2223 (2013) ............................................................................................... 11

*Gold v. Johns-Manville Sales Corp.*,
    723 F.2d 1068 (3d Cir. 1983) .................................................................................. 3, 15, 17

*Haines & Kibblehouse, Inc. v. Balfour Beatty Const., Inc.*,
    No. 11-2826, 2014 U.S. App. LEXIS 2031 (3d Cir. Feb. 3, 2014) ......................................... 14

*Howard Hess Dental Labs. v. Dentsply Int'l*,
    602 F.3d 237 (3d Cir. 2010) ........................................................................................ 11

*ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*,
    C.A. No. 12-054-GMS-MPT, 2012 WL 5599338 (D. Del. Nov. 15, 2012).............................. 15

*In re Packard*,
    No. 2013-1204, 2014 U.S. App. LEXIS 8448 (Fed. Cir. May 6, 2014)................................... 20

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)..................................................................................................... 16

*Macfarlan v. Ivy Hill SNF*,
    675 F.3d 266 (3d Cir. 2012) ........................................................................................ 14

*Microfin., Inc. v. Premier Holidays Int'l, Inc.*,
    385 F.3d 72 (1st Cir. 2004)........................................................................................... 16

*Monsanto Co. v. Syngenta Seeds, Inc.*,
    C.A. No. 04-305-SLR, 2006 WL 7204491 (D. Del. Nov. 8, 2006)........................................ 19

*Nokia Corp. v. Qualcomm, Inc.*,
    C.A. No. 06-509-JJF, 2006 U.S. Dist. LEXIS 61383 (D. Del. Aug. 29, 2006)....................... 11

*Pragmatus Telecom, LLC v. Adv. Store Co., Inc.*,
    C.A. No. 12-088-RGA, 2012 WL 2803695 (D. Del. July 10, 2012)................................ 19, 20

*SenoRx, Inc. v. Hologic, Inc.*,
    C.A. No. 12-173-LPS-CJB, 2013 WL 144255 (D. Del. Jan. 11, 2013) ................................. 15

*SoftView LLC v. Apple Inc.*,
    C.A. No. 10-389-LPS, 2012 U.S. Dist. LEXIS 104677 (D. Del. July 26, 2012) .................... 17

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001)..................................................................................... 9, 13

*United States v. Singer Mfg. Co.*,
    374 U.S. 174 (1963).................................................................................................... 12

*Versata Software, Inc v. Callidus Software, Inc.*,
    Civ. No. 12-931-SLR, 2014 WL 1868869 (D. Del. May 8, 2014).......................................... 17

## Other Authorities

J. Jonas Anderson & Peter S. Menell, *Informational Deference: A Historical, Empirical, and
    Normative Analysis of Patent Claim Construction*, 108 Nw. U. L. Rev. 1 (2014)................... 16

## **INTRODUCTION**

Defendant Round Rock Research, LLC seeks to stay this antitrust and breach of contract case until sixty days after "final judgment" in two patent infringement cases pending in this Court and in California.  Not only would such a stay prejudice SanDisk by delaying resolution of its claims for an untold number of years, but Round Rock also bases its motion on an incorrect premise:  that validity, infringement, and damages rulings in the two patent cases could "negate," "outright resolve," or "effectively end" this case because the patent cases supposedly concern "the same alleged conduct that forms the basis of SanDisk's antitrust allegations."  That is wrong.  Indeed, when opposing SanDisk's motion for leave to amend to add antitrust and breach of contract counterclaims, Round Rock told this Court the exact opposite:  "SanDisk's new proposed counterclaims have minimal if any connection to the infringement and validity issues currently in dispute."  (D.I. 48 at 3, *Round Rock Research, LLC v. SanDisk Corp.*, C.A. No. 12-569-SLR.)  Round Rock confirmed its view of the separateness of the patent and antitrust claims by representing that SanDisk's antitrust and breach of contract "counterclaims are not compulsory."  (*Id.* at 17 n.7.)  The doctrine of judicial estoppel precludes Round Rock from strategically abandoning its prior position; but more importantly, Round Rock had it right the first time.  SanDisk's antitrust claims do not depend upon resolution of the patent cases.

This lawsuit concerns abuse of a private standard-setting process and a conspiracy to hold-up implementers of JEDEC standards with undisclosed patents.  Whether that conduct violates the antitrust laws or constitutes a breach of contract will *not* be answered in the patent litigation.  As the Third Circuit held in *Broadcom*, claims such as SanDisk's turn on whether the plaintiff can plead (and ultimately prove) the elements of monopolization, attempted monopolization and conspiracy to monopolize counts.  *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315-19 (3d Cir. 2007).  That is why "claims based on fair, reasonable and non-

discriminatory licensing obligations are not contingent upon the results of patent infringement suits regarding the same patents." *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178-bbc, 2011 U.S. Dist. LEXIS 72745, at *16-18 (W.D. Wis. June 7, 2011) (rejecting argument that antitrust and breach of contract counterclaims are "not fit for judicial decision" until question of whether patents "are *actually* essential to the respective standards" is decided).

Even though it has repeatedly alleged that SanDisk infringes nine of its patents solely because SanDisk's products implement a JEDEC standard, Round Rock now suggests that SanDisk's antitrust counts should be delayed for an unknown number of years because Round Rock's allegations might be wrong. Citing no law, Round Rock claims (D.I. 8 at 6) that, "[i]f the patents are found to be invalid, then the monopolization claims would necessarily fail." Not only is that incorrect as to the monopolization claims, it ignores SanDisk's attempted monopolization and conspiracy to monopolize claims—which are in no way negated if Round Rock has attempted to hold-up SanDisk and extort over $200 million with invalid, but alleged to be standards essential, patents.

Round Rock's argument that it "would not gain any tactical advantage" from a stay and that "the benefits from a stay would apply to both parties equally" (*id.* at 7-8) makes no sense. Here, Round Rock seeks to postpone SanDisk's antitrust claims while remaining free to continue asserting its undisclosed patents through and long after trial solely to gain a tactical advantage and attempt to pressure SanDisk into paying it over $200 million. Indeed, the indefinite stay that Round Rock seeks—a stay until 60 days after "final judgment" in both patent cases—necessarily means that SanDisk could not begin to assert its antitrust claims for at least three more years, given the bifurcation of damages in the Delaware patent action and the fact that Round Rock purports to have another five patents awaiting a trial date in that case. There is far more than "a fair possibility" that a stay would damage SanDisk by preventing access to this court to redress

harm to SanDisk, while allowing evidence to support SanDisk's claims to disappear. *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075-76 (3d Cir. 1983) (party seeking stay must "demonstrate 'a clear case of hardship or inequity,' if there is 'even a fair possibility' that the stay would work damage on another party.") The prejudice that SanDisk would suffer itself requires denial of Round Rock's motion.

Given the prejudice inherent in a request like Round Rock's and the differing questions to be answered in antitrust and patent cases, it should not be surprising that the relief Round Rock seeks is unprecedented. No court has stayed antitrust claims like the ones brought by SanDisk here to await resolution of a patent case. The cases that Round Rock cites all involve very different situations: (1) antitrust claims based on sham litigation, which cannot succeed if there is merit to the underlying patent case; or (2) stays of patent cases pending reexamination of the patents-in-suit. The Court should deny Round Rock's motion and permit discovery and other proceedings in this case to proceed in parallel with the patent cases.

## NATURE AND STAGE OF THE PROCEEDINGS

SanDisk filed this action on March 19, 2014. (D.I. 1.) As described in its complaint, SanDisk challenges a conspiracy involving Round Rock and Micron:

> Round Rock is a patent assertion entity created in concert with Micron to acquire and then assert patents that Micron itself could not enforce against SanDisk and its other competitors. Micron was unable to assert the patents itself because of (1) commitments it had made to a standard-setting organization, the JEDEC Solid State Technology Association ("JEDEC"), (2) commitments Micron had made with respect to patents it had not disclosed to JEDEC, and (3) the risk of countersuit. After acquiring patents from Micron, Round Rock sought from SanDisk supracompetitive, hold-up royalties for patents that Micron had never disclosed to JEDEC and that Round Rock claimed SanDisk infringed by practicing a JEDEC standard ("the eMMC standard"). When SanDisk did not capitulate to its demands, Round Rock sued seeking above-RAND royalties and treble damages based on undisclosed alleged standard-essential patents ("undisclosed alleged SEPs"). That is precisely what Micron's then CEO, Steven Appleton, and other Micron employees testified under oath that Micron would not and could not do, and what Micron itself claimed violated the antitrust laws.

(*Id.* ¶ 2.)  SanDisk asserts actual and attempted monopolization and conspiracy to monopolize under Section 2 of the Sherman Act, as well as breach of contract, and violations of California's Cartwright Act and Unfair Competition Law.  (*Id.* ¶¶ 93-121.)

SanDisk first sought to bring these claims against Round Rock as counterclaims in a patent-infringement lawsuit pending in this Court, *Round Rock Research, LLC v. SanDisk Corp.*, C.A. No. 12-569 ("Delaware Patent Case").  In that case, Round Rock asserts seven patents that it contends SanDisk infringes "by making . . . iNAND eMMC embedded flash drives . . . that comply with SanDisk's eMMC v4.41 specification and JEDEC Standard JESD84-A441." (D.I. 5.)  As was its practice at the time, the Court bifurcated infringement and validity issues from damages which will be the subject of a separate trial (or trials).  (D.I. 17.)  Noting the burdens placed on the Court and juries by the assertion of multiple patents, the Court required Round Rock to choose which patents it wished to prosecute at a January 2015 trial.  (Feb. 20, 2014 Disc. Conf. at 6:17-9:19.)  Round Rock has chosen the patents it wishes to pursue initially, but it has not dismissed the five other patents and has made clear that it intends to assert them against SanDisk later:  "Trial on infringement and validity of five of these patents is scheduled for January 2015 (with the other five patents to be addressed at a later date)."  (D.I. 159 at 1.)

SanDisk timely sought leave to amend its counterclaims in the Delaware Patent Case to add antitrust and breach of contract counts on June 24, 2013.  (D.I. 40.)  Round Rock opposed that motion, arguing that the proposed counterclaims would unduly complicate the patent case and prejudice Round Rock.  As part of its opposition, Round Rock represented that:

> SanDisk's new proposed counterclaims have minimal, if any, connection to the patent infringement and validity issues currently being litigated—all of which relate to SanDisk's activities in infringing the patents-in-suit.  SanDisk's proposed new claims, to the contrary, relate to alleged activities of Round Rock and third part[y] Micron.

4

(D.I. 48 at 16; *see also id.* at 3.)   Round Rock also told this Court that SanDisk's proposed antitrust and breach of contract counterclaims were permissive, not compulsory, because they did not arise from the same transaction or occurrence as its patent claims.   (*Id.* at 17 n.7 ("[C]ounterclaims are not compulsory.").)[1]   The Court denied SanDisk's motion for leave without prejudice on January 30, 2014, concluding that "the complex issues identified in the motion should be litigated as a separate case[.]"   (D.I. 113.)   SanDisk then filed this lawsuit.

Round Rock and SanDisk are also litigating a patent case in the Northern District of California.   *SanDisk Corp. v. Round Rock Research LLC*, Case No. 11-cv-05243-RS (N.D. Cal. 2011) ("California Patent Case").   In that proceeding, Round Rock contends that SanDisk infringes two patents "by making . . . iNAND eMMC embedded flash drives . . . that comply with SanDisk's eMMC v4.41 specification and JEDEC Standard JESD84-A441[.]"   (D.I. 226 ¶¶ 229-39, California Patent Case; *see also id.* ¶¶ 207-17.)   Round Rock also asserts two other patents against SanDisk in that case.

SanDisk refers to the California and Delaware Patent Cases as "the Patent Cases."   It refers to the nine patents that Round Rock alleges to be essential to JEDEC's JESD84-A441 standard as the "undisclosed alleged SEPs."

---

[1]    In support of its motion for leave, SanDisk noted the potential efficiencies to be gained from permitting coordinated discovery into antitrust and patent issues given the potential overlap in fact discovery related to JEDEC, but also explained that the alternative was "a separate lawsuit—as Round Rock acknowledges by contending that the counterclaims are permissive."   (D.I. 52 at 1.)   SanDisk also noted that "[i]f the Court would prefer that SanDisk file a separate lawsuit and relate it to this one, SanDisk will do so."   (*Id.*) SanDisk never argued that the outcome of the Patent Cases are dispositive of the antitrust claims—because they are not.

### SUMMARY OF ARGUMENT

1.      A stay would provide no benefit because the antitrust claims do not depend on the outcome of the Patent Cases—and Round Rock should be judicially estopped from arguing otherwise.

2.      Round Rock proposes a stay that would last for several years, thus incalculably prejudicing SanDisk.

3.      Round Rock cannot "demonstrate a clear case of hardship or inequity" from allowing this case to proceed.

### STATEMENT OF FACTS

In this lawsuit, SanDisk alleges that Round Rock conspired with Micron to conceal patents from JEDEC, a standard-setting organization ("SSO"), to assign those patents to Round Rock, and to breach licensing encumbrances to which those patents are subject.  (D.I. 1.)

**A.      JEDEC Develops Standards and Guards Against Hold-Up**

JEDEC develops open standards for the microelectronics industry through a collaborative process.  (D.I. 1 ¶¶ 24-27.)  When different technologies can perform the same function within a proposed standard, SSOs have a choice.  (*Id.* ¶ 28.)  But once an SSO selects a standard and the industry invests in adopting it, the owners of proprietary technologies included in the standard can "hold-up" those implementing it.  (*Id.* ¶ 30.)  In the Third Circuit's words, firms can "become 'locked in' to the standard.  In this unique position of bargaining power, the patent holder may be able to extract supracompetitive royalties from the industry participants." *Broadcom*, 501 F.3d at 310.

To protect against such hold-up, JEDEC requires every participant in its meetings "to inform the meeting of any knowledge they may have of any patents, or pending patents, that might be involved in the work they are undertaking."  (*Id.* ¶ 32.)  That obligation is a continuing

one.  (*Id.* ¶ 34.)  Unless a member disclosing a patent agrees to license it on reasonable and nondiscriminatory ("RAND") or royalty-free ("RF") terms, JEDEC will not include the technology in the standard.  (*Id.*)

### B.  Micron Conceals Patents from JEDEC

JEDEC's JC-64 committee develops standards for embedded flash memory.  (*Id.* ¶¶ 27, 37.)  In March 2010, it issued the JESD84-A441 eMMC specification, which followed prior eMMC standards.  (*Id.* ¶ 27.)  That specification is relevant to certain products sold by SanDisk, which is a global leader in flash memory storage solutions.  (*Id.* ¶ 22.)

Micron competes with SanDisk in the DRAM and NAND flash memory industry.  (*Id.* ¶ 4.)  Micron was "an active member of JC-64" during JC-64's development of the eMMC specification, and its employees played lead roles in that committee.  (*Id.* ¶¶ 36-39.)  Micron's Vice President of NAND Development in 2006, Frankie Roohparvar, is the named inventor of six of the undisclosed alleged SEPs.  (*Id.* ¶ 39.)  That year, he presented at the Flash Memory Summit on "Proposed New MMC BGA Features" under discussion at JC-64.  (*Id.*)  From at least 2006, Micron guided the eMMC standard that JC-64 was developing toward the undisclosed alleged SEPs.  (*Id.*)  At no point did Micron or any of its representatives disclose the alleged SEPs to JC-64 or to one of its subcommittees.  (*Id.* ¶ 13.)

### C.  Round Rock and Micron Conspire to Abuse the Standard-Setting Process

Micron knew JEDEC's patent-disclosure and licensing requirements.  Indeed, in 2007, it alleged that Rambus had violated the antitrust laws by concealing patents from JEDEC and by revising pending patent claims to read on JEDEC standards then under consideration.  (*Id.* ¶¶ 83-86.)  Furthermore, as Micron's then-CEO testified in litigation concerning Rambus, a JEDEC member that failed to disclose a patent to JEDEC could not later assert that patent against companies that implemented the standard.  (*Id.* ¶ 5.)

In light of its binding public commitments and its knowledge of JEDEC's rules, Micron could not itself assert undisclosed alleged SEPs against its competitors. (*Id.* ¶ 2.) Financial distress in 2008 and 2009 led Micron to conspire with Round Rock, which is a purpose-built, non-practicing entity impervious to patent countersuit. (*Id.* ¶¶ 7, 9, 50-61, 104.) Micron assigned to Round Rock five undisclosed alleged SEPs on December 23, 2009, and four more on March 16, 2012. (*Id.* ¶¶ 56-57.) Round Rock has since breached the encumbrances that attach to all nine of those undisclosed alleged SEPs. (*Id.* ¶¶ 70-81.)

## ARGUMENT

Round Rock wants to stave off its antitrust exposure for years while remaining free to assert one undisclosed alleged SEP after another against SanDisk. The Court should not entertain such an unjust and prejudicial request. Nor should it tolerate Round Rock's tactical reversal of positions and inaccurate claims. This antitrust case does not depend on the outcome of the Patent Cases. Even aside from undue prejudice, the Court should deny Round Rock's motion because there would be no material benefit to a stay—which would only serve to assist Round Rock and Micron's conspiracy and thereby endanger standard setting and continued participation in JEDEC by companies like SanDisk.

## I.    A STAY MAKES NO SENSE BECAUSE THIS CASE DOES NOT RELY ON THE PATENT CASES

Round Rock insists that the Patent Cases may "negate," "outright resolve," and "effectively end entirely this recently filed antitrust action." (D.I. 8 at 1, 7-9.) Its motion hinges on that premise. But that premise is incorrect. Indeed, Round Rock previously asserted the contrary to this Court in successfully opposing SanDisk's motion for leave to amend to assert counterclaims in the Delaware Patent Case. Not only does that undermine the credibility of its current position, it also triggers the doctrine of judicial estoppel.

#### A.       SanDisk's Antitrust Claims Do Not Depend on the Patent Cases

Round Rock says that the Patent Cases concern "the same alleged conduct that forms the basis of SanDisk's antitrust allegations." (*Id.* at 2.)  That is not correct.  This case concerns Micron's participation in the JC-64 committee and subcommittee, non-disclosure of the alleged SEPs, why Micron helped to create Round Rock, what those two companies agreed upon, what they knew about the undisclosed alleged SEPs, and the circumstances surrounding Micron's assignment of the undisclosed alleged SEPs to Round Rock.  (Statement of Facts, *supra*.)  The infringement or damages issues in the Patent Cases will not resolve questions relevant to whether Round Rock's conduct violated the antitrust laws.  Nevertheless, Round Rock makes three arguments to the contrary.

First, it asserts that, "[i]f the patents are found to be invalid, then the monopolization claims would necessarily fail because the alleged harm to competition is the enforcement of valid SEPs." (D.I. 8 at 6.)  Round Rock cites no authority in support of that proposition, which is unsurprising because it is wrong.  As the Third Circuit explained in *Broadcom*, "[d]eception in a consensus-driven private standard-setting environment harms the competitive process by . . . *increasing the likelihood* that patent rights will confer monopoly power on the patent holder." 501 F.3d at 314 (emphasis added).  Anticompetitive conduct does not become innocuous merely because its exclusionary effect is probabilistic.  *United States v. Microsoft Corp.*, 253 F.3d 34, 79 (D.C. Cir. 2001) (eliminating nascent threats is anticompetitive even without proof that those threats would grow into substitutes).  Instead, Round Rock must "suffer the uncertain consequences of its own undesirable conduct." *See id.* (citation omitted).

*Broadcom* does not require a patent mini-trial within an antitrust trial—which is what Round Rock claims is necessary here.  Rather, it holds that "deceptive nondisclosure of IPRs [intellectual property rights]," coupled with a standard-setting organization's reliance, is

actionable anticompetitive conduct. *Broadcom*, 501 F.3d at 314. Similarly, it is clear that an "intentionally false promise" not to assert undisclosed patents against a JEDEC standard, "coupled with an SDO's reliance on that promise when including the technology, and . . . the patent holder's subsequent breach of that promise, is actionable anticompetitive conduct." *Id.* That is precisely what SanDisk has alleged here.

Second, Round Rock contends that, if the Patent Cases "determine that the Patents-at-Issue are not SEPs, then there can be no monopolization claims, and no duty for the patents to have been disclosed to JEDEC." (D.I. 8 at 6.) Setting aside the fact that it has repeatedly alleged that its patents are SEPs, Round Rock again fails to cite any authority for its argument and, again, it is incorrect. Round Rock ignores that there was "an obligation to disclose any patents that *might* involve the work of JEDEC's JC-64 committee and JC-64.1 subcommittee[.]" (D.I. 1 ¶ 4) (emphasis added). Further, no case requires that an antitrust plaintiff first prove that a patent is a SEP before establishing a Section 2 violation based on failure to disclose. In fact, the law is all to the contrary.

For example, in *Apple*, Motorola contended that Apple's antitrust and breach of contract counterclaims were "not fit for judicial decision" until the question of whether the patents "are *actually* essential" to the standards at issue was decided. 2011 U.S. Dist. LEXIS 72745, at *16. Judge Crabb rejected that contention, noting that "Motorola has cited no cases in which the court concluded that contractual or antitrust claims related to licensing obligations cannot be resolved before resolution of related patent infringement suits." *Id.* at *19. Instead, the court explained that "claims based on fair, reasonable and non-discriminatory licensing obligations are not contingent upon the results of patent infringement suits regarding the same patents." *Id.* at *18.[2]

---

[2]     The *Apple* court also considered and rejected the potential of consolidating Apple's

In *Nokia Corp. v. Qualcomm, Inc.*, C.A. No. 06-509-JJF, 2006 U.S. Dist. LEXIS 61383, at *4 (D. Del. Aug. 29, 2006), Judge Farnan held that a Chancery Court suit for breach of FRAND licensing obligations raised no substantial question of federal patent law (patent law was not a necessary element of plaintiff's claims) and remanded the case.  The court explained: "It is not necessary, as Defendant contends, to determine whether the patents at issue are in fact 'essential' because Defendant has already voluntarily declared them essential."  *See also Ericsson Inc. v. Samsung Elecs. Co.*, Civ. No. 2:06-CV-63, 2007 U.S. Dist. LEXIS 29257, at *5-8 (E.D. Tex. Apr. 20, 2007) (severing claims for breach of FRAND licensing commitment for separate trial from patent infringement claims).

Finally, Round Rock ignores SanDisk's attempted monopolization and conspiracy counts, as well as its state law claims.  A cause of action for conspiracy to monopolize requires: (1) a conspiracy; (2) an overt act in furtherance of the conspiracy; (3) specific intent; and (4) a causal connection between the conspiracy and the injury alleged.  *See Howard Hess Dental Labs. v. Dentsply Int'l*, 602 F.3d 237, 253 (3d Cir. 2010).   None of those elements depends on the conspiracy's success.  Whether the patents are actually SEPs, as Round Rock claims, is therefore irrelevant to SanDisk's conspiracy claim.  Round Rock and Micron agreed to assign and to assert undisclosed alleged SEPs, took multiple acts in furtherance of that agreement with the requisite specific intent of attempting to achieve monopoly power in licensing those patents, and thus injured SanDisk.  Discovery will prove as much, and the Patent Cases do not bear on that result. *See FTC v. Actavis, Inc.*, 133 S. Ct. 2223, 2232 (2013) (approving of holding in *United States v.*

---

counterclaims and staying discovery on them because "the primary factual and legal questions necessary to resolve Apple's counterclaims are distinct from those necessary to resolve the patent infringement claims."  *Id.* at *51-52.

*Singer Mfg. Co.*, 374 U.S. 174 (1963) that a conspiracy to assign and to assert patents against common rivals was illegal regardless of the validity of the patents).

### B.  Round Rock's Supracompetitive Pricing Is Separate from the Patent Cases

Round Rock also suggests that it cannot violate the antitrust laws in conspiring not to disclose alleged SEPs if it has not yet charged a monopoly price.  (D.I. 8 at 6.) (arguing that "the *sine qua non* of SanDisk's Complaint [is] . . . whether Round Rock is seeking to extract supracompetitive pricing.").  This is wrong for several reasons.

First, *Apple* and the other cases discussed above make clear that there is no requirement to await resolution of patent cases before adjudicating questions related to breach of RAND royalty rates.

Second, SanDisk alleges that "Micron's purposeful non-disclosure renders the purported SEPs unenforceable, and thus properly subject to royalty-free licensing" and "Round Rock assumed the burden of Micron's enforceable promise to license the alleged SEPs on RAND terms, which in this case are royalty free."  (D.I. 1 ¶¶ 99, 115.)  Round Rock cannot deny that it seeks greater than zero damages from SanDisk as to the undisclosed alleged SEPs.  Thus, it does not matter what sum a fact finder might attach to those patents.  If SanDisk proves that the patents were the subject of a royalty-free encumbrance that bound Round Rock, the latter's demand for royalties for implementing a JEDEC standard is an attempt to extract monopoly prices.  Moreover, SanDisk seeks an injunction barring Round Rock from claiming that SanDisk infringes undisclosed patents by implementing a JEDEC standard.  The FTC imposed such a non-enforcement remedy in *Dell Computer Corp.*, 121 F.T.C. 616, 618 (1996), for Dell's efforts to enforce undisclosed patents against a standard.  *See Broadcom*, 501 F.3d at 310-11 (citing *Dell* and explaining that the consent order in that case required "that Dell cease and desist from asserting that the use or implementation of the standard violated its IPRs.").

12

Third, it is a staple of Section 2 jurisprudence that, "[i]f monopoly power has been acquired or maintained through improper means, the fact that the power has not been used to extract [a monopoly price] provides no succor to the monopolist." *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 274 (2d Cir. 1979); *see also United States v. Microsoft Corp.*, 253 F.3d 34, 57 (D.C. Cir. 2001) (en banc) (per curiam).  Thus, it is no requisite of SanDisk's antitrust claims that Round Rock already have demanded a monopoly price.

Round Rock's supracompetitive pricing argument is wrong for another reason.  Strategic nondisclosure to an SSO violates the antitrust laws when the SSO relies on that omission in adopting its chosen standard.  *See Broadcom*, 501 F.3d at 314.  "JEDEC would and could have designed around the undisclosed alleged SEPs had they been revealed to the JC-64 committee or JC-64.1 subcommittee."  (D.I. 1 ¶ 63.)  That being so, Round Rock's assertion and demand for positive royalties for patents that JEDEC would not have included in its eMMC standard is actionable monopolization regardless of the outcome of the Patent Cases.

### C.   Round Rock Should Not Be Permitted To Benefit From Taking Inconsistent Positions

It is difficult to imagine a more dramatic example of a party's flip-flopping for the sake of expediency than the one presented here.  Seeking a tactical advantage, Round Rock argues in its motion to stay that the Patent Cases involve "the same alleged conduct that forms the basis of SanDisk's antitrust allegations."  (D.I. 8 at 2.)  But, in opposing SanDisk's motion for leave to file antitrust counterclaims less than one year ago, Round Rock said exactly the opposite:

> SanDisk's new proposed counterclaims have minimal, if any, connection to the patent infringement and validity issues currently being litigated—all of which relate to SanDisk's activities in infringing the patents-in-suit.  SanDisk's proposed new claims, to the contrary, relate to alleged activities of Round Rock and third part[y] Micron".

(D.I. 48 at 3.)  Judicial estoppel "exists 'to protect the integrity of the judicial process and to prohibit parties from deliberately changing positions according to the exigencies of the

13

moment.'" *Macfarlan v. Ivy Hill SNF*, 675 F.3d 266, 272 (3d Cir. 2012). The Third Circuit applies the doctrine of judicial estoppel when the facts satisfy three requirements. "First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position 'in bad faith—i.e., with intent to play fast and loose with the court.' Finally, a district court may not employ judicial estoppel unless it is 'tailored to address the harm identified' and no lesser sanction would adequately remedy the damage done by the litigant's misconduct." *Haines & Kibblehouse, Inc. v. Balfour Beatty Const., Inc.*, No. 11-2826, 2014 U.S. App. LEXIS 2031, at *10 (3d Cir. Feb. 3, 2014).

The facts here easily satisfy the three factors. First, Round Rock has taken irreconcilably inconsistent positions. Second, Round Rock changed its position in bad faith—by playing fast and loose with the Court to try to obtain a tactical advantage through a stay of this case. Third, the Court can tailor a narrow sanction here by prohibiting Round Rock from arguing that the Patent Cases will control the outcome of the antitrust case and denying its motion to stay. That application of the doctrine is narrowly tailored to cure the harm to the integrity of the judicial process, and merely requiring Round Rock to respond to SanDisk's complaint now is not prejudicial to Round Rock.

## II.    A STAY WOULD UNDULY PREJUDICE SANDISK, PREVENTING IT FROM LITIGATING ITS CLAIMS FOR SEVERAL YEARS

### A.    A Stay Would Severely Harm SanDisk

Round Rock wants to freeze this case for an indefinite amount of time, but probably at least three years. During that time, it would neither move to dismiss nor answer. There would be no Rule 26(f) conference and no discovery. SanDisk, the victim of a conspiracy, would be stuck in limbo—unable to vindicate its rights and uncertain about whether it will be subject to repeated infringement suits based on undisclosed patents. But no such limitation would fetter

14

Round Rock.  It would subject SanDisk to one trial after another, attacking its product line merely for complying with a JEDEC standard.

Such a stay would be gravely unjust.  Round Rock has not shown that any hardship or inequity would befall it should the Court deny its motion.[3]  Thus, even if Round Rock could articulate some material advantage from a stay—which it cannot—the Court should deny the motion.  *See, e.g.*, *Gold*, 723 F.2d at 1075-76 ("It is well settled that before a stay may be issued, the petitioner must demonstrate 'a clear case of hardship or inequity,' if there is 'even a fair possibility' that the stay would work damage on another party."); *ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, C.A. No. 12-054-GMS-MPT, 2012 WL 5599338, at *3 (D. Del. Nov. 15, 2012) ("[T]he court has previously employed this language and called for the movant to demonstrate that the denial of a stay would result in a clear case of hardship or inequity where there is even a fair possibility that a stay would prove detrimental to one of the parties . . . . [This] clearly is the law of this Court.") (internal quotations and citations omitted).

In short, staying the case would unduly prejudice SanDisk, and tilt the strategic balance wholly in Round Rock's favor.  That would be improper.  *See, e.g.*, *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 711 F. Supp. 1205, 1208 n.9 (D. Del. 1989) ("Where [] a stay could result in a tactical advantage to one party or the other, this Court will not employ its discretion to stay the ordinary course of proceedings simply because the outcome of the Patent Office proceedings may moot the issues remanded.").

---

[3]    At most, Round Rock argues that it will suffer "the time and expense of discovery and motion practice . . . ." (D.I. 8 at 1.)  But, "[t]his type of economic harm has been deemed not to amount to the kind of 'undue' hardship or inequity referenced in the case law." *SenoRx, Inc. v. Hologic, Inc.*, C.A. No. 12-173-LPS-CJB, 2013 WL 144255, at *9 n.12 (D. Del. Jan. 11, 2013).

### B.      Round Rock's Proposed Stay Would Last for Many Years

Round Rock wrongly implies that a stay would be short-lived, observing that "trials in other cases . . . are scheduled to begin in mere months." (D.I. 8 at 1.)  To the contrary, a stay until "final judgment" in the Patent Cases would be indefinite and protracted.  At the very least, it would last for several years.  For that reason, too, the Court should deny Round Rock's motion. *See Landis v. N. Am. Co.*, 299 U.S. 248, 257 (1936) ("The stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description."); *see also Microfin., Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 79 n.4 (1st Cir. 2004) (observing, with respect to a motion to stay, that "the public has an interest in prompt resolution of civil cases").

In the Delaware Patent Case, Round Rock asserts seven undisclosed alleged SEPs and three other patents.  An infringement trial as to the liability issued on up to three undisclosed alleged SEPs, and two other patents, is scheduled for January 20, 2015.  Round Rock will likely argue that the January trial should be followed by a bifurcated liability case schedule (*e.g.*, claim-construction proceedings, expert discovery, dispositive motions) and then by a trial or trials on liability (bifurcated from damages) for the remaining patents.  After post-trial motions, there would be review by the Federal Circuit of the claim constructions and the liability verdicts.  As the Court knows, the Federal Circuit reverses more than a one-third of all claim constructions. *See, e.g.*, J. Jonas Anderson & Peter S. Menell, *Informational Deference: A Historical, Empirical, and Normative Analysis of Patent Claim Construction*, 108 Nw. U. L. Rev. 1, 5 (2014).  If there were liability verdicts for Round Rock and the Federal Circuit affirmed, the case would return to this Court for a damages trial or trials.  As a result, even the most optimistic projection in the Delaware Patent Case puts final judgment three years away.

In fact, the stay that Round Rock seeks may last significantly longer than three years. Although the Court has scheduled trial for January 2015 on five patents, it is unclear how many patents and claims would make their way to the January trial. *Versata Software, Inc v. Callidus Software, Inc.*, Civ. No. 12-931-SLR, 2014 WL 1868869, at *3 n.7  (D. Del. May 8, 2014) (explaining that the Court presently allows a patentee to litigate no more than two patents before any one jury).  And if fewer than five of the patents currently elected by Round Rock are tried in January 2015, it is also unclear whether the remainder of those five patents would make their way into separate trials, not to mention the other five patents (not currently elected by Round Rock) that Round Rock purports to reserve the right to pursue later.  In sum, should the Court follow the rule of no more than two patents per trial, and Round Rock is ultimately allowed to litigate all ten patents, the result could be up to five infringement trials.  Further, even if Round Rock presents five patents to the same jury, a reversal from the Federal Circuit would necessitate doing the first round of liability trials all over again.  There is a very real possibility that a stay would endure for a half-decade.

The fact that a stay would last for several years makes it improper.  *See, e.g.*, *Gold*, 723 F.2d at 1075-76 (observing with respect to motions to stay that "the clear damage to the plaintiffs is the hardship of being forced to wait for an indefinite and . . . a lengthy time before their causes are heard.") (citation omitted); *Belden Techs. Inc. v. Sup. Essex Comm'cns*, Civ. No. 08-63-SLR, 2010 WL 3522327, at *3 (D. Del. Sept. 2, 2012) ("In the case at bar, Belden may statistically wait as long as three years . . . this factor cuts against the grant of a stay.").

Furthermore, such a protracted stay would compromise SanDisk's ability to collect full evidence in support of its claims, as memories of events that largely took place in 2006-2010 fade over time.  That fact, too, counsels against a stay.  *See, e.g.*, *SoftView LLC v. Apple Inc.*, C.A. No. 10-389-LPS, 2012 U.S. Dist. LEXIS 104677, at *13-14  (D. Del. July 26, 2012) ("[A]

17

stay in this case would likely last several years; resuming litigation after a protracted stay could raise issues with stale evidence, faded memories, and lost documents. . . .  Accordingly, the Court will deny Defendants' motion to stay litigation.").

In short, staying this antitrust case until final judgment in the Patent Cases would freeze the proceedings, likely for at least three years, and potentially much longer.  Round Rock knows this, but tries to obscure it by failing to even estimate how long its proposed stay would endure. As explained above, a stay would be for naught because SanDisk's antitrust claims do not depend on the Patent Cases.

## III.  NO LAW SUPPORTS ROUND ROCK'S MOTION

Because the Patent Cases will not control the outcome of this case, there is no reason for a stay.  Doing so would prevent SanDisk from litigating its well-founded claims, and delay the resolution of this case with trivial, if any, offsetting benefit.  The Court need consider nothing further to deny Round Rock's motion to stay.

Round Rock does not cite a case akin to this one.  That is because no court has *ever* stayed an abuse-of-standard-setting antitrust case to await a ruling whether undisclosed patents are SEPs.  To the contrary, where plaintiffs assert antitrust claims involving SEPs, courts decline to stay or to dismiss pending the outcome of infringement proceedings involving those patents. *See, e.g.*, *Apple*, 2011 U.S. Dist. LEXIS 72745, at *7-8.

The cases which Round Rock cites are entirely different.  It relies predominantly on cases that involved antitrust claims based on allegedly sham litigation. *See Apotex, Inc. v. Senju Pharm. Co.*, 921 F. Supp. 2d 308, 314 (D. Del. 2013); *Eurand, Inc. v. Mylan Pharms. Inc.*, Civ. No. 08-889-SLR, 2009 WL 3172197, at *1 (D. Del. Oct. 2, 2009).  One way a patentee can violate the antitrust laws is by filing an objectively baseless lawsuit pursuant to an improper subjective purpose. *Id.*  Obviously, then, staying sham litigation antitrust counterclaims carries

some benefit, as the Court cannot resolve them until it has first adjudicated the patent claims because a winning patent suit cannot be objectively baseless. *Id.* Here, by contrast, SanDisk's antitrust claims do not depend on the outcome of the Patent Cases.

Round Rock suggests that "at least a minimal overlap between the patent case and the antitrust case" justifies a stay. (D.I. 8 at 5.) To support that proposition, it cites a one-page order: *Monsanto Co. v. Syngenta Seeds, Inc.*, C.A. No. 04-305-SLR, 2006 WL 7204491, at *1 (D. Del. Nov. 8, 2006). Nowhere did the Court suggest that a "minimal overlap" itself justifies, much less requires, a stay. Such a rule would conflict with settled law. *See, e.g.*, *Belden Techs. Inc. v. Sup. Essex Comm'cns*, C.A. No. 08-63-SLR, 2010 WL 3522327, at *2 (D. Del. Sept. 2, 2012) ("[A] stay is more appropriate when the only issues left for trial completely overlap with those typically resolved upon reexamination."); *Enzo Life Scis., Inc. v. Digene Corp.*, C.A. No. 02-212-JJF, 2003 U.S. Dist. LEXIS 10202, at *17-18 (D. Del. June 10, 2003) ("Although the Court recognizes that the Counterclaims may be mooted or simplified depending on the outcome of the patent issues, this must be weighed against the importance of judicial efficiency and fairness. After weighing the relevant factors, the Court will deny the motion to stay because the Court finds that the interest in efficiently moving on with the resolution of the Counterclaims outweighs [the movant's] concerns."). Rather, the Court prefaced its ruling in *Monsanto* on the fact that it had already granted plaintiff's Rule 54(b) motion and certified an appeal from the patent case. 2006 WL 7204491, at *1. Indeed, it observed that "the court will try the patent and antitrust cases during the same period of time, should Monsanto prevail on appeal." *Id.*

Finally, Round Rock relies on *Pragmatus Telecom, LLC v. Adv. Store Co., Inc.*, C.A. No. 12-088-RGA, 2012 WL 2803695 (D. Del. July 10, 2012). There, Judge Andrews observed that "I expect the determination of that case will most likely be dispositive of this case." *Id.* at *2. As explained above, that is not so here. Indeed, if *Pragmatus* has any bearing on this case at all,

it is that the court saw fit to weigh the fact that "Pragmatus is solely in the business of monetizing patents," and would thus not suffer any "clear tactical disadvantage or undue prejudice" from a stay. *Id.* SanDisk is a global manufacturer of technological products and having its product line exposed to repeated infringement suits simply because it has complied with a JEDEC standard would clearly prejudice SanDisk. *See, e.g.*, *In re Packard*, No. 2013-1204, 2014 U.S. App. LEXIS 8448, at *48 n.21 (Fed. Cir. May 6, 2014) ("Even if patent assertion entities do not prevail in the courtroom, their actions can significantly reduce incremental innovation while litigation is ongoing, a situation that can persist for years.") (citation omitted). Conversely, granting Round Rock's request for a stay would only insulate a patent assertion entity from being held accountable for the consequences of its conspiracy with Micron to target Micron's competitors who comply with a JEDEC standard.

There is no reason why SanDisk's claims should not proceed. The Court should deny Round Rock's motion to stay.

## IV.    NO OTHER FACTOR JUSTIFIES A STAY

Finally, Round Rock argues that a stay is appropriate because this case is at an early stage. (D.I. 8 at 7.) But this is never a reason in itself to stay a proceeding. There has to be some benefit in simplifying the issues that outweighs the inherent prejudice to the plaintiff that wishes to litigate its claims. Here, Round Rock can identify no material benefit at all, let alone one sufficiently compelling to justify a years-long stay. Furthermore, Round Rock brushes past the fact that SanDisk attempted to file its antitrust claims more than a year ago as part of the Delaware Patent Case. This factor provides no basis for staying the present case.

## CONCLUSION

For the reasons explained above, the Court should deny Round Rock's motion to stay.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com
jtigan@mnat.com

*Attorneys for Plaintiff SanDisk Corporation*

OF COUNSEL:

Christopher S. Yates
Hanno Kaiser
Sarah M. Ray
Alan Devlin
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

June 3, 2014

8287706

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 3, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 3, 2014, upon the following in the manner indicated:

Brian E. Farnan, Esquire                              *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801

Barbara T. Sicalides, Esquire                         *VIA ELECTRONIC MAIL*
Barak A. Bassman, Esquire
Noah S. Robbins, Esquire
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103-2799


                                        */s/ Jeremy A. Tigan*
                                        Jeremy A. Tigan (#5239)